FILED

2010 Feb-22  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONALD M. ROAN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:08-cv-0133-TMP |
| vs. | ) | |
| | ) | |
| AMSOL, LLC, AND AMSOL | ) | |
| PHYSICIANS OF ATHENS, AL, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION WITH RESPECT
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This action is before the court on the partial motion for summary judgment filed by plaintiff Ronald M. Roan, M.D. ("Roan").  (Doc. 21)  The motion was filed on August 7, 2009, and was supported by an evidentiary submission. The defendants filed a brief in opposition along with evidence in support thereof. Accordingly, the matter has been fully briefed.  All parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636 (c).  For the reasons set forth herein, the court finds that the plaintiff's motion for partial summary judgment is due to be denied.

SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify

which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

FACTS FOR SUMMARY JUDGMENT PURPOSES

Viewing the evidence in the light most favorable to the non-moving defendants, the following undisputed facts are relevant to the instant motion.

A. Roan Background

Ronald Roan is an anesthesiologist (Pl.'s Ex. A to Doc. 21 at Bates No. 0001), who graduated from the University of Alabama School of Medicine in 2000, did a general surgery internship at Keesler Air Force Base Medical Center for one year, and served three years as Chief Aerospace Medicine/Flight Surgeon at Keesler and at Malmstrom Air Force Base. (Id.) Dr. Roan thereafter completed a three-year residency at University Hospital in Birmingham. (Id.) He has been a member of the Air National Guard since 2004 (Roan Dep. 54:12-55:11, Ex. F to Doc. 21), which requires him to train for two weeks per year during the summer and one weekend per month. (Id. 60:1-7.)  Dr. Roan is subject to extended deployments, contingencies, and mandatory training. (Id.)

In early 2007 Roan submitted *curriculum vitae* to AmSol, a company seeking to fill a vacancy in its anesthesiology staff.  AmSol has a contract with Athens-Limestone Hospital to operate its anesthesiology department. (Id. 151:3-9) Roan advised AmSol that he would complete his residency on August 13, 2007. (Id. 39:1)

4

B. AmSol Recruitment to Fill Vacancy

AmSol Physicians of Athens, AL, LLC[1] entered into a contractual agreement with Athens-Limestone Hospital ("Hospital") in Athens, Alabama, in July 2006 in which AmSol would provide staff and management services to the hospital's anesthesia department. (Cottrell Aff. ¶ 7, Aug. 7, 2009). Prior to that date, anesthesiology services were provided by staff anesthesiologist Dr. Jimmy Dunn and Dr. Jon Bignault. Because the hospital experienced problems with this arrangement, it entered into the agreement with AmSol to provide those services. Jimmy Dunn is an anesthesiologist and a member of AmSol Physicians of Athens, AL, LLC. (Id. 12:5-19). AmSol did not hire or retain Dr. Bignault when it took over the anesthesiology department at the hospital.

In late 2006, AmSol began the recruitment process to hire an anesthesiologist to fill a vacancy when a member of Amsol, Dr. Maples, resigned. (Id.) Amsol formed a recruitment team consisting of Tony Wilson, who served as AmSol's recruiter (Wilson Dep. 10:7), Donna Lindsay (AmSol's regional vice president and Athens practice manager), and Dr. Jimmy Dunn, AmSol's Athens medical director. The Athens Limestone Hospital's CEO, Cary Payne, began advocating to AmSol that it should hire Dr. Jon Bignault, who previously had been on the hospital's anesthesiology staff. (Payne Dep. 18:2-19:4). Dr. Jimmy Dunn also wanted to hire Dr. Bignault even before he met Dr. Roan. (Payne Dep. 54:19-23). AmSol received eleven applications for the vacancy on its staff.

---

[1]   The relationship between AmSol and AmSol Physicians of Athens LLC, is unclear. Plaintiff contends that AmSol Physicians is a subsidiary of AmSol, which defendants deny. Nonetheless, neither defendant argues that they are separate entities, and the evidence is clear that AmSol was actively involved in and controlled the recruitment and hiring process at AmSol Physicians. Wilson and Lindsay were employees of AmSol, and it appears that it was AmSol that held the contract with Athens-Limestone Hospital.

Plaintiff, Dr. Ronald Roan, applied for the position with AmSol and interviewed for that position for the first time on February 6 or 7, 2007. (Roan Dep. 160:1-5).

Prior to Dr. Roan's interview, AmSol's recruiter, Tony Wilson, was concerned about Dr. Roan's commitment to the AmSol job because he (Dr. Roan) wanted to share the job with another physician.  (Wilson Dep. 29:16-30:6).  Dr. Dunn, who was directly involved in the recruitment and interview process,  also was concerned about Dr. Roan's loyalty to AmSol's Athens practice because of Dr. Roan's outside interests (e.g. travel and flying) and connections to Birmingham. (Dunn Dep. 27:17-28:6).

In a January 27, 2007, e-mail to Wilson relating to Dr. Roan's recruitment, Dr. Dunn stated, "I will have to say that I am not a big fan of military personnel and it has to do with the mentality of the military hospital system." (Pl.'s Ex. A to Doc. 21 at Bates No. 0094)  Dr. Dunn went on to say that he was not fundamentally opposed to hiring a "post-military doc," but "I just think that we need to factor that in to our decision, and not necessarily in a positive light." (Id.)

Following the February interview, Dr. Roan was not the leading candidate to fill the vacancy. But on February 9, 2007, the leading candidate, Dr. Umphrey, took another position, and on February 24, 2007, the second leading candidate, Dr. Campbell, did so also.  In response to that news, Dr. Dunn sent an email to Mr. Wilson and Donna Lindsay on February 24, stating in regard to Dr. Umphrey, who also had a military background, "...no tears from me as per our earlier conversation regarding military personnel." (Pl's Ex. A to Doc. 21 at Bates No. 0084; Dunn Dep. 41:20-43:5). His email continued, "[r]esidents everywhere are getting more antsy" in their job searches, and thus AmSol's recruitment team needed to "make an offer to someone soon." (Pl.'s Ex. K to Doc. 21 at Bates No. 65).

6

Dr. Roan was invited back for a second interview on March 14, 2007, after he had favorable references forwarded to the recruitment team. AmSol was receiving pressure from the hospital CEO, Cary Payne, to hire Dr. Bignault, and AmSol became concerned about losing its contract with the hospital. Payne contacted not only the recruitment team, but also Dr. Cottrell, the CEO of AmSol expressing a desire to see Dr. Bignault hired. Payne testified that his meeting with Dr. Roan was a mere courtesy. He indicated that other members of the Board of Directors of the hospital also wanted Dr. Bignault hired. At this same time, AmSol was contacted by anther candidate, Dr. Friederich, who was well known to Dr. Cottrell. After interviewing Dr. Friederich, AmSol concluded that the pressure to hire Dr. Bignault was too great to pursue even Dr. Friederich.

After the second interview, Wilson asked Dr. Roan about his military commitment. (Wilson Dep. 71:4-72:5) Specifically, he questioned Dr. Roan on whether AmSol would be required to pay Dr. Roan while he was deployed. (Id.) Wilson's reasoning behind the inquiry into paying Dr. Roan while deployed was that paying a "locums physician" to fill in for him would "bankrupt the practice." (Id.)

C. AmSol Hires Dr. Bignault

Dr. Jon Bignault was hired to fill the vacancy that Dr. Roan had applied for after "consistent pressure" to hire him from the CEO of the Athens-Limestone Hospital Board of Directors, Administration, and surgical staff. (Cottrell Aff. ¶ 28.) Cary Payne is Athens-Limestone Hospital's CEO. (Dunn Dep. 20:21-23.) Payne and Bignault had an existing friendship and working relationship prior to Dr. Bignault's hiring. (Cottrell Aff. ¶ 20, Aug. 31, 2009.) AmSol CEO James Cottrell testified that Dr. Roan's military status and military obligations were not a motivating factor in the selection process of hiring Dr. Bignault (Cottrell Aff. ¶ 33). Cottrell maintains that the

reasoning behind hiring Dr. Bignault was that he was the only candidate acceptable to the hospital, and AmSol had a desire to maintain its business relationship with the hospital. (Cottrell Aff. ¶ 29) AmSol believed that if Dr. Bignault was not hired, the contract with the hospital would be put in jeopardy. (Id.) Cottrell further testified that the hospital ultimately made the decision, and that the decision to hire Dr. Bignault would still have been made even if Dr. Roan had been recommended to fill the position. (Id. at 34.)

<u>DISCUSSION</u>

Plaintiff's motion for summary judgment seeks judgment as a matter of law on claims that the plaintiff was subjected to discrimination in hiring on the basis of his military service under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.* ("USERRA"). Because there are genuine issues of material fact, it is due to be denied.

38 U.S.C. §4311 (a) provides:

A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. §4311 (c) provides in pertinent part:

An employer shall be considered to have engaged in actions prohibited–

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service

A. Plaintiff's *Prima Facie* Case of Motivating Factor

In order to establish a *prima facie* case that his military status was a motivating factor in his not being hired, Dr. Roan must show by a preponderance of the evidence that his protected status was a motivating factor in AmSol's decision not to hire him.  Coffman v. Chugach Support Services, Inc., 411 F.3d 1231, 1238 (11th Cir. 2005).  A motivating factor does not mean that it had to be the sole cause, or the "but for" cause, of the decision not to hire the plaintiff.  Coffman, 411 F.3d at 1238.  Rather "it is one of the factors that 'a truthful employer would list if asked for the reasons for its decision."  Coffman, 411 F.3d at 1238.  Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.  Coffman, 411 F.3d at 1238.  In drawing inferences of discriminatory motivation under USERRA a variety of considerations may be used, such as:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

Coffman, 411 F.3d at 1238.  When the employee has met this burden, the burden shifts to the employer to prove the affirmative defense that legitimate reasons standing alone would have induced the employer to take the same adverse action.  Coffman, 411 F.3d at 1238.

9

The plaintiff has made a sufficient *prima facie* showing that his status as a member of the Air National Guard was at least a motivating factor in AmSol's decision not to hire him. Applying the factors first set out in Sheehan v. Department of the Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001), and reiterated by the court in Coffman, the pertinent factor is the employer's expressed hostility towards members protected by the statute, coupled with knowledge of the employee's military activity. Dr. Dunn, the Athens medical director and a member of the recruitment team, openly expressed to other members of the recruitment team that he was not a fan of military doctors, and that military service should be considered as "a factor" involved in the employment decision, but "not necessarily in a positive light."   In the course of the recruitment process, it is undisputed by the defendants that Wilson expressed that it would "bankrupt the practice" if AmSol was forced to hire locums physicians to fill in for Dr. Roan when fulfilling his military obligations. (Plaintiff's Mot. Summ. J. 42)  Further, when another potential candidate with a military background withdrew from consideration, it is undisputed by the defendants that Dr. Dunn said in an e-mail, "As far as Dr. Umphrey, no tears from me as per our earlier conversation regarding military personnel." (Plaintiff's Mot. Summ. J. 65) Dr. Roan's curriculum vitae clearly identified him as a member of the uniformed services, and Dr. Roan was questioned by Tony Wilson about his obligations to the Air National Guard.

There clearly was hostility on the part of AmSol and its agents toward members of the uniformed services — the class of person protected by USERRA.  Coupled with that hostility was the knowledge that Dr. Roan was an active reservist in the Air National Guard.  Therefore, under the factors for inference of discriminatory motivation under USERRA set out in Sheehan and Coffman, the plaintiff, Dr. Roan, has made out a *prima facie* case of discrimination.

10

B. AmSol's Affirmative Defense

When a plaintiff asserting a claim against an employer under USERRA meets the burden of making out a *prima facie* case of discrimination, the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." Coffman, 411 F.3d at 1239.  Here, plaintiff argues that there are no genuine issues of material fact and that the defendants are not able to show that there was any legitimate reason for their rejection of Dr. Roan.

There is a genuine issue of material fact in this case as to whether AmSol would have hired Dr. Bignault because of the pressure from the hospital, even absent hostility toward Dr. Roan based on his military service. Viewing the evidence in favor of the non-moving party, defendants AmSol and AmSol Physicians, a reasonable jury could find that the goal of maintaining the business relationship between AmSol and the Athens-Limestone Hospital was a legitimate reason that alone would have induced AmSol to hire Dr. Bignault instead of Dr. Roan.  There is evidence that AmSol rejected other candidates who had no military background for the same reason, that is, that hospital CEO Cary Payne was actively pushing Dr. Bignault for the position.  Whether this pressure, or hostility to Dr. Roan's military membership, was the real reason he was not hired is a genuine question that must be resolved by a jury.  Thus, it is proper that the plaintiff's motion for summary judgment be denied.

Additionally, there is a genuine issue of fact as to whether Dr. Roan suffered any economic loss sufficient to give him a "redressable injury" for purposes of constitutional standing to bring this action.  AmSol offers evidence that, during the time period after his rejection by AmSol, Dr. Roan made more money than did Dr. Bignault, indicating that Dr. Roan suffered no loss of income or other

11

economic injury.  In reply, Dr. Roan argues that much of the income he earned during this time period was in the nature of "moonlighting" income, earned on jobs he would have been able to work even if he had been hired by AmSol.  In any event, the court cannot say as a matter of law that Dr. Roan did, in fact, suffer an economic loss.  Again, this presents a genuine issue of fact for the jury, and summary judgment for the plaintiff is due to be denied.


## CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that the plaintiff's motion for summary judgment is due to be DENIED as to its claim of discrimination in employment under 38 U.S.C. 4301 *et seq.* ("USERRA").  There are genuine issues of material fact that preclude judgment as a matter of law.  A separate order will be entered in accordance with this memorandum opinion.

DATED the 22nd  day of February, 2010.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE