FILED

2010 Feb-22  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONALD M. ROAN, MD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:08-cv-0133-TMP |
| vs. | ) | |
| | ) | |
| AMSOL, LLC, AND AMSOL | ) | |
| PHYSICIANS OF ATHENS, AL | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION WITH RESPECT
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action is before the court on the motion for summary judgment filed by defendants

AmSol, LLC, and AmSol Physicians of Athens, AL, LLC ("AmSol"). (Doc. 22)  The motion was

filed on August 7, 2009, and was supported by an evidentiary submission. The plaintiff filed a brief

in opposition along with evidence in support thereof. Accordingly, the matter has been fully briefed.

All parties have consented to the exercise of jurisdiction by the undersigned magistrate judge

pursuant to 28 U.S.C. § 636 (c). For the reasons set forth herein, the court finds that the defendants'

motion for summary judgment is due to be denied.

### SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify

2

which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

FACTS FOR SUMMARY JUDGMENT PURPOSES

Viewing the evidence in the light most favorable to the non-moving plaintiff, the following facts relevant to the instant motion are undisputed or taken in a light most favorable to the plaintiff.

A. AmSol's Recruitment of Roan, and Others, to Fill Vacant Anesthesiologist Position

Defendants AmSol, LLC, and AmSol Physicians of Athens, AL, LLC, (hereafter collectively "AmSol" or "Defendants") entered into a contract with Athens Limestone Hospital for the purposes of managing and staffing the hospital's anesthesia department. (Payne Dep.13:7-12). There is a dispute of fact as to the relationship between defendants AmSol, LLC, and AmSol Physicians of Athens, AL, LLC., but plaintiff alleges that AmSol Physicians of Athens, LLC, is a subsidiary of AmSol, LLC. (Pl.'s Mot. Summ. J.)[1] Defendants allege that AmSol Physicians of Athens, AL, LLC, is not a subsidiary of AmSol, LLC, but rather a separately incorporated entity. (Def.'s Mot. Summ. J.).

AmSol was brought into the hospital to solve problems the hospital had experienced in providing anesthesiology services when those services were provided by Drs. Jimmy Dunn and Jon Bignault.  After AmSol and Athens Limestone entered into their contract, the anesthesiologists and nurse anesthetists were employed by AmSol Physicians, or jointly by AmSol Physicians and AmSol to provide services in the hospital's anesthesiology department.  Dr. Dunn was retained by AmSol, and two other anesthesiologists, Drs. Maples and Miller, were hired by AmSol.  Dr. Bignault was not initially retained or hired by AmSol.

---

[1]  The court notes that, in their brief in support of their motion for summary judgment, AmSol and AmSol Physicians do not stress any particular importance about their separate corporate existence.  Indeed, they treat themselves as a single entity in arguing the motion.

A vacancy occurred when Dr. Maples decided to resign from her position, and AmSol undertook the process of recruiting a new anesthesiologist.  AmSol formed a recruitment team composed of Tony Wilson, Donna Lindsay (AmSol's regional vice president and Athens practice manager), and Dr. Jimmy Dunn, AmSol's Athens medical director.  The Athens Limestone Hospital's CEO, Cary Payne, began advocating to AmSol that it should hire Dr. Jon Bignault, who previously had been on the hospital's anesthesiology staff.  (Payne Dep. 18:2-19:4).  Dr. Jimmy Dunn was AmSol's medical director at the relevant time, (Dunn Dep. 11:4-12:1), and he wanted to hire Dr. Bignault even before he met Dr. Roan.  (Payne Dep. 54:19-23).  AmSol received eleven applications for the vacancy on its staff.  Plaintiff, Dr. Ronald Roan, applied for the position with AmSol and interviewed for that position for the first time on February 6 or 7, 2007. (Roan Dep. 160:1-5).  Dr. Roan is an anesthesiologist (Pl's Ex. A to Doc. 21 at Bates No. 0001), who graduated from the University of Alabama School of Medicine in 2000, did a general surgery internship at Keesler Air Force Base Medical Center for one year, served one year as Chief Aerospace Medicine/Flight Surgeon at Keesler and, thereafter, served for two years in the same position at Malmstrom Air Force Base. (Id.)  Dr. Roan has been a member of the Air National Guard since 2004.  (Roan Dep. 54:12-55:11).  In this capacity, Dr. Roan is required to train for two weeks per year in the summer and one weekend per month throughout the year.  (Id. 60:1-7) He also remains subject to being activated for extended deployment.

Prior to Dr. Roan's interview, AmSol's recruiter, Tony Wilson, was concerned about Dr. Roan's commitment to the AmSol job because he (Dr. Roan) wanted to share the job with another physician.  (Wilson Dep. 29:16-30:6).  Dr. Dunn, who was directly involved in the recruitment and interview process, also was concerned about Dr. Roan's loyalty to AmSol's Athens

5

practice because of Dr. Roan's outside interests (e.g. travel and flying) and connections to Birmingham. (Dunn Dep. 27:17-28:6). During the interview, Dr. Roan was questioned about his service in the Air National Guard and how it might affect his availability to the AmSol practice.

B. Alleged Discrimination

In a January 27, 2007, e-mail to Mr. Wilson pertinent to the recruitment of Dr. Roan, and before Dr. Roan was interviewed, Dr. Dunn stated: "I will have to say that I am not a big fan of military personnel and it has to do with the mentality of the military hospital system." (Pl.'s Ex. A to Doc. 21 at Bates No. 0094). Dr. Dunn went on to say that he was not fundamentally opposed to hiring a "post-military doc," but "I just think that we need to factor that in to [sic] our decision, and not necessarily in a positive light." (Id.).

Following the February interview, Dr. Roan was not the leading candidate to fill the vacancy. But on February 9, 2007, the leading candidate, Dr. Umphrey, took another position, and on February 24, 2007, the second leading candidate, Dr. Campbell, did so also. In response to that news, Dr. Dunn sent an email to Mr. Wilson and Donna Lindsay on February 24, stating in regard to Dr. Umphrey, who also had a military background, "...no tears from me as per our earlier conversation regarding military personnel." (Pl's Ex. A to Doc. 21 at Bates No. 0084; Dunn Dep. 41:20-43:5). His email continued, "[r]esidents everywhere are getting more antsy" in their job searches, and thus AmSol's recruitment team needed to "make an offer to someone soon." (Pl.'s Ex. K to Doc. 21 at Bates No. 65).

Dr. Roan was invited back for a second interview on March 14, 2007. Tony Wilson stated that Dr. Roan was the "leading candidate" after he interviewed with AmSol the second time. (Wilson Dep. 70:18-71:3). Further, although AmSol was receiving pressure from the hospital CEO, Cary

Payne, to hire Dr. Bignault, AmSol showed a desire to resist the pressure. (Pl.'s Ex. K to Doc. 21 at Bates Nos. 197, 131, 138, 142, 152, 219.)[2]   A day or so after the interview, Donna Lindsay instructed Tony Wilson to make an offer of employment to Dr. Roan, but before this was done, Dr. Cottrell, AmSol's CEO, expressed concern to Ms. Lindsay that Dr. Roan's military service could bankrupt the local practice.   Ms. Lindsay then sought guidance from AmSol's human resources department concerning the company's obligation to pay a service-member employee who is deployed to active duty. Mr. Wilson asked Dr. Roan about his military commitment. (Wilson Dep. 71:4-72:5). Specifically, Mr. Wilson questioned Dr. Roan on whether AmSol would be required to pay him in the event he became deployed by the Air National Guard for an extended period of service  (Id.), and Dr. Roan replied that he would not have to be paid by AmSol while on active duty. Wilson's reasoning behind the inquiry into paying Dr. Roan while deployed was a concern that paying a "locums physician" to fill in for him would "bankrupt the practice." (Id.)[3]

On March 21, 2007, AmSol informed Dr. Roan that it was not ready to make an offer and that it would continue to interview candidates.

---

[2]   Defendants filed a Motion to Strike Paragraph 17 of Pl.'s Ex. D. To Doc. 21 titled "Declaration of Donna Lindsay," arguing that Ms. Lindsay's statements about Dr. Dunn's "concerns" and "worries" are based on her impressions of another's state of mind, and not her personal knowledge, as required by Rule 56(e)(1) of the Fed. R. Civ. Proc. The motion (Doc. 33) is DENIED. Ms. Lindsay and Dr. Dunn both served on the recruitment team, and as part of that process they undoubtedly had many conversations about the strengths and weaknesses of the candidates they interviewed.  To work as a team, the members had to express themselves to the other members. Thus, although Ms. Lindsay's affidavit may be inartful, it clearly expresses the personal knowledge she gained about the views of other members of the team.

[3]   A "locums physician" refers to a "locum tenens" physician, that is, a physician who works on a temporary basis, often as a temporary replacement for a permanent physician.

C. AmSol Hires Dr. Bignault; Dr. Roan Seeks Other Employment

AmSol hired Dr. Jon Bignault to fill the vacancy that Dr. Roan had applied for after "consistent pressure" from the CEO of the Athens-Limestone Hospital Board of Directors, administration, and surgical staff. (Cottrell Aff. ¶ 28). Cary Payne was and is Athens-Limestone Hospital's CEO. (Dunn Dep. 20:21-23). Payne and Bignault had an existing friendship and working relationship prior to Dr. Bignault's hiring. (Cottrell Aff. ¶ 20, Aug. 31, 2009). AmSol CEO James Cottrell testified that Dr. Roan's military status and military obligations were not a motivating factor in the selection process of hiring Dr. Bignault (Cottrell Aff. ¶ 33). Cottrell maintains that the reasoning behind hiring Dr. Bignault was that he was the only candidate acceptable to the hospital, and AmSol had a desire to maintain its business relationship with the hospital. (Cottrell Aff. ¶ 29). AmSol believed that if Dr. Bignault was not hired, the contract with the hospital would be put in jeopardy. (Id.)

After AmSol hired Dr. Bignault, Dr. Roan worked part-time for AirMed, an air ambulance company, sporadically for EDCare, an emergency physician staffing company, and as an "irregular part-time" assistant professor of anesthesiology at the University of Alabama Birmingham. (Roan Dep. 15:3-16:23, 21:15-23:11, 26:15-27:9).[4]

_____

[4]     Defendants' Motion to Strike (Doc. 39) a portion of Paragraph 10 of Pl.'s. Ex. J to Doc. 32 titled "Declaration of Ronald M. Roan, M.D" is due to be DENIED pursuant to Fed.R. Civ.P. 56(c) in that the affiant made a statement which was not based upon personal knowledge. Dr. Roan testified that, if he had been hired by AmSol, he would have been able to work other "moonlighting" jobs for additional income. This testimony was based upon the time demands presented to him by AmSol as part of the recruitment process and his own personal experience in obtaining these "moonlighting" positions. The prediction that he would have been able to juggle both jobs is reasonably based on his personal knowledge of the job demands and his ability to fulfill both jobs. The objection goes to the weight, not the admissibility of the statements.

DISCUSSION

The plaintiff alleges that defendants AmSol, LLC, and AmSol Physicians of Athens, AL, LLC, violated §4311 of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") by refusing to hire him because of his current and anticipated military obligations. Defendants' motion for summary judgment on this claim argues that by plaintiff cannot prove that his military obligations were a motivating factor in the decision not to hire him, that AmSol can prove that the reason for not hiring him was the pressure to hire Dr. Bignault, and that plaintiff has no standing to assert a USERRA claim because he suffered no economic loss.

Title 38 U.S.C. §4311 (a) provides:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

Section 4311 (c) provides in pertinent part:

> An employer shall be considered to have engaged in actions prohibited–
>
> (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service

A. Motivating Factor Analysis

In order to establish a *prima facie* case of USERRA discrimination, Dr. Roan must show by a preponderance of the evidence that his protected status as a military member was a motivating factor in AmSol's decision not to hire him.  Coffman v. Chugach Support Services, Inc., 411 F.3d

1231, 1238 (11ᵗʰ Cir. 2005).  A motivating factor does not mean that it had to be the sole cause of the decision not to hire the plaintiff.  <u>Coffman</u>, 411 F.3d at 1238.  Rather, "it is one of the factors that 'a truthful employer would list if asked for the reasons for its decision.'" <u>Coffman</u>, 411 F.3d at 1238. Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.  <u>Coffman</u>, 411 F.3d at 1238.  In drawing inferences of discriminatory motivation under USERRA a variety of considerations may be used, such as:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

<u>Coffman</u>, 411 F.3d at 1238.  When the employee has met this burden, the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action.  <u>Coffman</u>, 411 F.3d at 1238.

The plaintiff, Dr. Roan, has made a sufficient *prima facie* showing that his status as a member of the Air National Guard was at least a motivating factor in AmSol's decision not to hire him.  Applying the factors first set out in <u>Sheehan v. Department of the Navy</u>, 240 F.3d 1009, 1014 (Fed. Cir. 2001), and reiterated by the court in <u>Coffman</u>, the pertinent factor is the employer's expressed hostility towards members protected by the statute, coupled with knowledge of the employee's military activity. In the course of the recruitment process, it is undisputed by the Defendants that Mr. Wilson expressed that it would "bankrupt the practice" if AmSol was forced to hire locums physicians to fill in for Dr. Roan when fulfilling his military obligations. (Plaintiff's

Mot. Summ. J. 42.)  Dr. Dunn, the Athens medical director and a member of the recruitment team, openly expressed to other members of the recruitment team that he was not a fan of military doctors, and that military service should be considered as "a factor" involved in the employment decision, but "not necessarily in a positive light."  Further, when another potential candidate with a military background withdrew from consideration, it is undisputed by the defendants that Dr. Dunn said in an e-mail, "As far as Dr. Umphrey, no tears from me as per our earlier conversation regarding military personnel." (Plaintiff's Mot. Summ. J. 65).  Dr. Roan's *curriculum vitae* clearly identified him as a member of the uniformed services, and Dr. Roan was questioned by Tony Wilson and other members of the team about his obligations to the Air National Guard.

There was clearly hostility on the part of AmSol and its agents toward members of the uniformed services — the class of persons protected by USERRA.   That hostility was acknowledged as a "factor" weighing in the employment decision.  From the recruitment team to the CEO, Dr. Cottrell, there was concern that employing a military doctor could "bankrupt the practice" if he were activated, and this concern clearly played a negative role in the decision not to offer employment to Dr. Roan.  Coupled with that hostility was the knowledge that Dr. Roan was an active reservist in the Air National Guard. Therefore, under the factors for inference of discriminatory motivation under USERRA set out in Sheehan and Coffman, the plaintiff, Dr. Roan has made out a *prima facie* case of discrimination, and thus the Defendants' motion for summary judgment is to be denied as to this issue.

B. AmSol's Affirmative Defense

When a plaintiff asserting a claim against an employer under USERRA meets the burden of making out a *prima facie* case of discrimination, the burden shifts to the employer to prove the

affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same action." Coffman, 411 F.3d at 1239.  In this case, AmSol argues that, notwithstanding plaintiff's military service, he would not have been hired to the fill the vacancy in Athens because the CEO of the Athens-Limestone Hospital, Cary Payne, was insisting adamantly that Dr. Bignault be hired to the fill it.  AmSol contends that it was not hostility to plaintiff's military membership, but a desire to accommodate its client, Athens-Limestone, that motivated AmSol to reject plaintiff and to hire Bignault.

There is a genuine issue of material fact in this case as to whether AmSol would have hired Dr. Bignault even absent hostility toward Dr. Roan based on his military service. Viewing the evidence in favor of the non-moving party, plaintiff Dr. Roan, a reasonable jury could find that AmSol would have hired Dr. Roan, but for his military obligations, notwithstanding the stated potential legitimate reasons for not hiring him.  Dr. Roan has showed strong evidence of hostility to his military service and that such was a motivating factor in the decision to reject him for employment on March 21, 2007.  Although it is true that Payne was pressuring AmSol to hire Bignault at that time, there also is evidence that AmSol had not, at that point in time, acceded to the pressure.  At the point in time AmSol informed plaintiff that it would not be making an offer to him, AmSol had not decided to cave to Payne's pressure or to hire Bignault.  Indeed, AmSol's own evidence indicates that it was still pursuing other candidates for the position, including a Dr. Friederich.  Thus, the court cannot say as a matter of law that the pressure from Carey Payne for AmSol to hire Dr. Bignault would have prevented AmSol from hiring Dr. Roan.  That is for a jury to determine.

The defendants also argue that they were pursuing a candidate more qualified than Dr. Roan (Dr. Friederich) to fill the anesthesiologist position. Considering the more qualified candidate has been held to be a legitimate business reason for the non-hiring of a potential employee. Brooks v. County Commission of Jefferson County, Ala., 446 F.3d 1160 (11th Cir. 2006).  However, the instant case is analogous to Leisek v. Brightwood Corp., 278 F.3d 895, 900 (9th Cir. 2002).  In Leisek an employer did not establish as an uncontroverted fact that it would have terminated an employee regardless of his military status simply because terminating him for unexcused absences was a legitimate reason for doing so.  Similarly, the fact that Dr. Roan was less qualified than other candidates does not mean that AmSol *would* have decided not to hire him regardless of his military status. Several factors such as AmSol's stated need to quickly fill the position, its expenditures on locums physicians to temporarily fill the vacancy, the fact that residents were becoming "antsy" about finding a job, the fact that AmSol was still resisting the hospital's insistence that AmSol hire Dr. Bignault, and the fact that Dr. Roan was the leading candidate for the position, tend to show that there is a genuine issue of material fact of whether the hiring decision was the result of legitimate reasons, or influenced at least in part by hostility to Dr. Roan's protected military status.

C. Roan's Standing to Bring a USERRA Claim

AmSol also argues that the court must dismiss the case because Dr. Roan lacks standing to assert a USERRA claim.  In particular, defendants argue that between the time Dr. Roan could have started employment with AmSol to the time the hospital terminated the AmSol contract about a year later, he made more money than did Dr. Bignault, the person hired for the job he sought.  This, they say, means that Dr. Roan suffered no compensable economic loss or back pay and, therefore, has

no "redressable" injury for purposes of constitutional standing under Article III "case or controversy" law.

Constitutional standing has three requirements. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992). First, a plaintiff must demonstrate that he has suffered an injury in fact which is actual, concrete, and particularized. <u>Lujan</u>, 504 U.S. at 561. Second, the plaintiff must show a causal connection between the conduct complained of and injury. <u>Lujan</u>, 504 U.S. at 561. Third, the plaintiff must establish that the injury will be redressed by a favorable court decision. <u>Lujan</u>, 504 U.S. at 561. The third requirement is at issue in the instant case. Defendants argue that Dr. Roan does not have standing to prosecute his claim because he was actually compensated more for the work he did after he was not hired by AmSol than Dr. Bignault was compensated by AmSol for the position that Dr. Roan was seeking. However, Dr. Roan disputes the defendants' allegation that he made $408,792.00 through various positions after AmSol declined to hire him. In fact, Dr. Roan asserts that he was compensated only $183,134.00 for work that is eligible to be deducted from his gross back pay in the calculation of damages.

As the court in <u>Darnell v. City of Jasper, Alabama</u>, 730 F.2d 653 (11th Cir. 1984), stated in the context of a Title VII employment discrimination case, "Because a plaintiff has a duty to minimize damages and because alternative employment opportunities will sometimes prove more economically rewarding than the position sought, back pay awards are limited to proven economic loss." In the instant case, the Plaintiff contends that a substantial portion of his income between the time he was not hired by AmSol and the filing of this suit was income that *could* have been drawn concurrently with the position he would have held with AmSol, had they hired him. Stated another way, plaintiff says that even if he had been hired by AmSol, he still could have "moonlighted" to

earn the additional income he made during the relevant time period.  AmSol should not benefit from plaintiff's "moonlighting" income, if, in fact, plaintiff could and would have realized that same income had he been employed by AmSol.

Viewing the evidence in favor of the non-moving party, the plaintiff, there is a genuine issue of material fact as to whether or not Dr. Roan could have worked as a  physician for AirMed, EDCare, and as an assistant professor at UAB while simultaneously working as an anesthesiologist for AmSol. See Bing v. Roadway Express, Inc., 485 F.2d 441, 454 (5th Cir. 1973). Since a reasonable jury could find that it would have been possible for Dr. Roan to perform these three "moonlighting" jobs during the same time period as he would have been employed in the AmSol anesthesiologist position, the income from such jobs is not properly offset against the compensation AmSol would have paid him because, according to plaintiff, he could have earned *both*.  If a jury accepts this, Dr. Roan suffered a loss of income with respect to the AmSol position, and therefore, his alleged injury would be redressable by a favorable court decision as required by the court in Lujan. Thus, it is proper that the defendants' motion for summary judgment as to lack of constitutional standing to bring suit be denied.


CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of an in opposition to the motion for summary judgment, this court determines that the defendants' motion for summary judgment as to plaintiff's claim of discrimination in employment under 38 U.S.C. § 4301 *et seq.* ("USERRA"), is due to be DENIED.

A separate order will be entered in accordance with this memorandum opinion.

DATED the 22nd day of February, 2010.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE